16-1338 Mark Tamosiunas, NL Petitioners v. NLRB Mr. Kalman for Petitioner, Ms. Collins for Respondent, and Mr. Myers for the intervener. You may be ready, please. Mr. Kalman for Petitioner, Ms. Collins for Respondent, and Mr. Myers for the intervener. Mark Tamosiunas and other petitioning employees. In this case, a divided National Labor Relations Board held that no reasonable employee, not a single one of them, could have been restrained or coerced by the Union's objectively false March 2014 billing letter, which demanded payment of as much as $1,200 in back dues that no nonmember actually owed. As Member McFerrin wrote, the Board majority failed to distinguish the Board's prior decisions in Pomona Valley on any legally sound basis, and the decision here must be reversed and remanded. Is this a case of coercion or restraint? Absolutely, Your Honor. Which one, or both? Both. And how do you define – I'm really having trouble discerning anywhere how coercion is defined. Coercion to force somebody to do something that they're not otherwise obligated to do, which in this case is send a billing demand letter, a very strong billing demand letter to people who aren't obligated to pay it. And restraint, meaning to stop somebody from making a free choice about how they're going to order their relationship. I guess that's your definition. I was trying to find in Board decisions or case law helpful definitions on understanding the scope of coercion or restraint in this context. Because in other contexts, coercion is a very, very strong word, but in this case it's still a strong word, but we also have this if any reasonable employee could read it that way, which seems to be sort of a softer test. So I'm trying to really understand what the nature of the inquiry is here. Well, Your Honor, I mean, I tried to give – Well, there were Board cases. Yeah, that's exactly where I was about to go. The United Parcel, the Board found the union violated 8B18 by attempting to obligate nonmembers to pay dues for periods during which there was no union security clause in effect. That's exactly right. Threatening them with discharge if they failed to do so. Right. Tech well, same thing. Right. And Pomona Valley, and the case that we cite that hasn't been discussed enough in the briefs is called Central Telephone, IBEW Central Telephone, in which the Board said you don't need a threat, you don't need to tell someone you're going to be fired if you don't pay this money. Just making a demand for money that you have no obligation to pay, that is illegal. And here – And so that's not an ordinary – this is a different sense of coercion than what we think maybe out in a sort of common law one, which tends to have – Well, sure. So that's something to understand. But does that mean that any mistaken request or letter – just a letter, decide whether you want to call it a request or demand – A mistaken letter that says, complete mistake, just goes to one employee by mistake, one non-core member, one non-member or fair representation member by mistake. Well, I think – And says, it says, it says, you owe this amount of money and heads up, we're going to – we're putting in the paperwork with the employer. Have a nice day. Well, I think that would be restraint and coercion. The fact that it was a mistake doesn't mean that the reader, the employee whose rights are protected – and don't forget, Your Honor, this whole National Labor Relations Act is about protecting employees from employers and unions. It's not about protecting unions from employees. So the fact that in your hypothetical the letter was a mistake wouldn't change the fact that when I as an employee get a demand letter – I don't work in labor law. It's not intuitive. And if you take the case law here, I mean, what you're saying is these people, this group, gave prior notice to the union. We're not covered. So don't bill us before this all happens, as I recall. They sent a notice to the union, right? They sent a letter saying we don't want to be members and we don't want to pay. We don't want to be members and don't charge us. So the union had a prior correspondence. Notwithstanding that, the union sent them a letter, which is pretty strong in its terms, and then they sent a request from the employer and the employer deducted until the employer realized, oh, mistake. And then the interesting thing is, and I thought you would argue it, when the unions ask, hey, what's going on, you read their letter, there's no mea culpa there. There's no, oh, we made a mistake. Sorry about that. And the only people with whom they're corresponding are this group, not all the rest. And there are other similarly affected employees. Your Honor, every – But that's your argument. Yes. Let's say she doesn't work at Label all the time. You've got to say that's the context, Judge. It is different from you should not say to her if one letter went out to an employee and the union says, oh, that's a mistake, that that would be coercion. No, it wouldn't be. It would be a mistake. Your argument here is if you take the facts in this case, the whole context is coercive. And when the union got a chance to say we apologize, it was a mistake, they didn't do that. Your Honor, you have just articulated my entire argument. I believe it's in the briefs. Well, you can sit down and hear what the board says. Well, I don't want you to sit down yet because now I'm very confused. And I am not an expert labor lawyer like Judge Edwards here. So help me understand because I got some real confusion from both sides' briefs here. And that is what time frame do we use for determining whether the employee is coerced to pay? And that is because sometimes you say it's the four corners of the letter. And then by your reply brief you go, no, no, no. Include the fact that actual garnishments were made afterwards, but we can't look four days later and say they apologized for it. So I'm trying to understand, is it, do we ask, when you look at the letter, because you can imagine, maybe someone read this letter and goes, let's say a reasonable person would read this letter or my hypothetical letter and go, this is clearly a mistake. But then they get the notice from their employer, their paycheck, and it's missing 60-something dollars. They go, that's not a mistake, this is terrible, this is horrible, they're taking my money. I'm clearly not being able to exercise my rights, they just made me pay money I don't owe. So now they feel like their rights have been violated. And then they get the apology and they go, oh, it's just a mistake. Was there an apology letter in here? In my hypothetical. An apology from the employer. Hyatt said we made a mistake. There wasn't an apology letter here. It was from Hyatt. Excuse me? There was an apology from Hyatt. They said they made a mistake. From the employer. From Hyatt, yes. No, no, I get that. But I want to make an important point. I think Judge Edwards articulated a lot of this already. But there was no mistake in this case. No, I'm asking a time frame question. I'm trying to understand the scope of my inquiry because both sides have been all over the place on is it the four corners of the letter or is it my context but not your context? Generally, I think it's the overall context. But to directly answer your question, if you just look at the four corners of this letter, I don't understand how any reasonable employee would not have your take needed, too. I mean, answer the question. You say generally it's the overall context, but here we look at the four corners of the letter. Which is it? What case are you citing for which proposition? All parties, I believe, agree that you look at the general context to find what an objective employee would have believed. My answer to Judge Millett is whether you look at the four corners of this letter. Can I ask you when the generally doesn't apply? When? Well, in this case, it was only a week or so later that the deductions were made. No, no, you said generally. To both of us, you used that nice lawyer word called generally. Well, I don't have a case that I can cite to you on the when. The cases that the Board has previously promulgated or issued results consistent with what you want involve situations where the union makes a demand for dues that they can't collect. That's it. There's no general beyond that. You've got to stay within this framework. And I thought your argument was they demanded money for a period when they could not demand money. That's correct. That's the end of my argument. You shouldn't be talking about, well, generally this, generally that. We're not going to write a case that talks about generally. If you win, it's because they demanded money for a period with respect to which they had no right to demand money. And it was clear that that's what they were demanding it for. And they never apologized for it. And the employer realized it was a mistake by that period. And that's it. Your Honor, that is my argument. I'm trying to respond to the questions. The letter itself, as in many other prior cases, whether it's Pomona Valley or Central Telephone or Kaiser Hospital, the letter itself contains an illegal demand and, in this case, a very threatening illegal demand. The Pomona standards are clear. This letter is not factually or legally distinguishable from Pomona. It's clear that employees receiving this would have been threatened. I cite former NLRB Chairman William Gould, who said in the Bloom Group Health case, everyone knows that this area is fraught with ambiguity. When a union says membership, it could mean many different things. This union security clause required membership. And so any reasonable employee would be coerced upon receiving this letter. My time is up for now, and I will concede. Thank you. So it's no surprise where I have questions. I think I'm just telling you so you can answer for what they're worth. I don't know. Looking at Pomona and some of the other cases that I've looked at, I don't know how you get around them. You can't make a demand. It's not the single employee. It's not a situation when the union comes back and says, oh, good heavens, we made a mistake. Sorry about that. It's a very clear demand, and the board cases are clear. Very clear demand for money that you're not entitled to for the period for which that money is demanded. Now it's icing on the cake for them that some money was actually taken out. You don't even need that. How do you get around those cases? Well, the cases, essentially what petitioners are arguing and how you're framing the case law, is that a demand alone is sufficient to cause coerciveness. And that's simply not what the case law shows. There needs to be something. And I think this goes to Judge Millett. Your point is, what is the coerciveness? The coerciveness speaks to doing something you don't have to, that you have a Section 7 right to not do. So the coerciveness is linked to these union security clauses. So you are coerced to paying money during a time period where you're not because of the union security clause. But how do you not have that here in two respects? One, they didn't give these employees any choice. They said, we're taking the money out of your next paycheck. And that same day, it wasn't like people could come forward and say, hang on, there's a mistake. That same day, they turned the paperwork into Hyatt and said, take it out. So that seems to me at a minimum to have prevented them from exercising their rights for that two-week period not to pay these dues to the union. And secondly, they said, we're going to kick you out. You're not going to be a member of the union. But membership in the union is required for a job. So those are my two, within the letter. Yes. So I'm going to try to answer them in turn. The first being the letter itself. There's absolutely no mention of a contract in this letter as any demand being resulting from the contract, let alone the specific union security clause. It's simply not, it's not there. I saw your argument there. I don't know why that matters. So what? They're clearly making a demand. Of course they couldn't. That would even be worse if the union said, it's not that what they did was good. It was just what you're opposing would be even worse, to lie and say that the contract was in effect. It wasn't in effect. And the employee has already given notice. Don't charge us anything. So that's the main point. So the violation occurs when you're making the demand and linking it to a contract in which you do not have an obligation. How could they make the demand? I'm sorry? How could they make the demand? Making a demand. They have no basis. Well, yeah, here it's right. I mean, they didn't. It was a mistake. No, no. That's what you want in the worst way for us to believe. And I might have at least wavered if the union's response had been interesting. The union's response was like, get out of my face. Are you referring to the letter? Yeah. The follow-up letter? Come on. I've seen enough of these. There was kind of a back of the hand. Get out of here. And you know that as well as I do. That was not, whoa, we made a mistake. What we meant to say was, well, you know, if you really want to be a part of the operation. That's nonsense. That's not an apology. We made a mistake. That was like, well, we got caught. And that would be relevant if the applicable legal standard, the union's state of mind mattered. Here we're looking at what employees reasonably in the petitioner's shoes would, if they would have a tendency to be coerced. Let me read you the board authority again that I read to them that they should have been arguing. The board says when you make a demand of employees like this, this is not one employee. It's coercive. And I understand what Judge Millett is asking. Is that coercion the way we normally understand it? No. But in the context of the NLRA, it is coercive because you have no authority to do it. And the relationships are so tricky and tenuous anyway. There's always battles going on. And these are employees who don't want to be members of the union, don't want to even have to pay anything. And they've said, don't charge us when that contract expires. And the union did. And again, I would just like to stress that the case law does not say that a mere demand is sufficient. But this isn't a mere demand. I mean, if we think about wage employees, even me, if I got a letter from someone that said, by the way, you owe me this and it's going to be out of your next paycheck, have a nice day. I'm going to be stressed out. People can't, a lot of people can't live paycheck to paycheck. They can't have $60 missing out of paychecks. Isn't that a real, we don't even need to go to your mere demand. Please pay. We don't have to go there because there was a threat here, or more than a threat, even worse, an implementation of forced payment in the letter itself. Why isn't that enough to make a difference? I'm sorry. I'm not sure I completely understand. So your hypo is. Not hypo. This letter says. That this is not a mere demand. It's not a mere demand because it didn't just say, hey, you owe me, please pay. Here's a coupon below. It said, you owe me. And we're taking it out of the next paycheck. And it also says. It'll be gone out of your next paycheck. The rationale as to why you owe me. I mean, the rationale is based on membership. And petitioners. Yes, and membership is something I have to have to keep my job. And petitioners know and have previously for years asserted that right to be financial core members. Or member-like. They knew what that meant. Well, members. They knew. And they're told they're not going to be members. And even put that aside. I think that's a problem in its own right. But I just want you to answer my question. Why isn't this more than a demand when they say money will be missing from your next paycheck? Is it demand to collect? Money will be missing from your next paycheck. Yes. If someone walked up on the street with a gun and said money will be taken. I'm going to take money out of your paycheck. There'd be no question that's coercive. And more than a mere demand to pay. Right? They take money out of them. They've got nothing they can do about it. That seems to be much worse. In the face of the letter and saying that they're going to. Or you have to make arrangements. They didn't say make arrangements. That very day. The union didn't wait for anyone to make arrangements. The same day the letter went out, they were at Hyatt giving them the list. And the amount of money to dock from everybody's pay. The same day on this record. So I just want to just clarify in terms of the face of the letter. The letter does provide for the only option here. And I see that my time may continue. The only option is not to have the fees, the dues deducted. There also is. It does say that if that doesn't happen, you're responsible for this. And then it goes on. To facilitate this, we have billed your employer for the balance listed below. In the first line. A deduction will be reflected on upcoming pay stub. Your dues must be made current. And I think that's where the fact that the petitioners and similarly situated employees were not full dues paying members. And they knew that. They knew that. Everyone was on the same page. So to say that they would read this and just forget that for years that had been acknowledged as financial core. See, well, then you're skipping over what the act intends to protect. What you're posturing is, look, these should be strong people. They should say, oh, heck with this stupid union and this nonsense. That's not what the act is supposing. The act is supposing that there are all kinds of players, some of whom are easily intimidated and coerced by precisely this kind of behavior, some of whom would look at this and say, throw it in the trash. And a reasonable person could be coerced by this. Because it says your dues must be made current, and we're going to go to the employer and get the money. We've already told the employer to play, actually. And I think, just briefly, the time period that we're kind of looking at is not so much what happens after, but when the employees receive the letter. But it's crucial that these employees, for years, have asserted their right under Section 7 to not be full members. We have billed your employer. Yes. We have billed your employer. Yes. So that means I'm demanding payment and I am collecting it. I'm going to take it right out of your pocket. I'm not waiting for you to mail me anything. How is that? What the board reasoned here is that would not be coercive because a reasonable employee in that situation would know that, would think that it was obviously a mistake. Why isn't it restraint? You have restrained them from exercising their right not to pay. I think the board here was saying that it was not a coercion. Okay, there's two words, restraint. Yes. Why are they not restrained from exercising their right not to pay this amount? How are they not restrained by this letter? That would be a separate charge. So the actual deduction could be a separate violation of the act, which is not at issue here. Here we're talking about whether the letter, just the letter itself. You're saying unions can't restrain people? Oh, no. Oh, I'm sorry. I didn't mean to say that at all. So the union is restraining them by saying we're demanding this money and there's nothing you can do about it. You don't get to exercise your right not to pay because I'm getting it from your employer. What I was intending to say is that that could be. That could be a legal theory of the case. It is not here. And the finding that the board made here is not dependent upon that. And here what the board is, essentially what petitioners have to show is that it was arbitrary and unreasonable for the board to decide this. The board reasonably relied upon the fact that for years everyone was on the same page. They weren't full members. Everyone knew this. If they would receive this, it would be reasonable. The only reason the union wouldn't have sent the letter. I'm sorry? The union shouldn't have sent the letter then. Well, I mean, yes. That's like saying an employee wants to get into an operation and union advocates are blocking the door and you say I'm going to punch you in the face if you move. And what's your argument? Well, a reasonable person would know the union can't do that. But we know that that's coercive under the Act, right? Yes. I mean, I think that would be a different situation here. I can't figure out how you draw the line. Well, I think that being punched in the face is a little different. They say hand over your wallet and then you can go. I'm sorry? Hand me over your wallet. I'm going to take some money out and then you can go. I think that would also be a different situation. How is this any different than saying hand over your wallet and then you can go? It's coercive. Well, here they would know when they're seeing this, this isn't right. They would know that. They can know what's wrong, but that doesn't mean they know. They would know that. So just because of the fact that there's a mistake that was made, maybe. That's what you want. Or, you know, and the board didn't find that. So just to be clear, I do want to be clear, the board did not find that this was a mistake. The board found that an employee, a reasonable interpretation would be that it was a mistake, that everyone would know that this was wrong. I see that my time is long expiring. I have a question about the union's, I guess, letter of clarification. It's at J136. So the union says, you know, what we were referring to is what you would have to pay in order to become a full member. And then in the second paragraph it says, if you wish to enjoy the full benefits of membership, you must pay the dues amount listed in the statement, and there it was $674 and some odd cents. Would this petitioner, to join the union, have to pay that full amount? Or would they just have to start paying, like, as of that day, whatever it is that would pertain to joining the union? I don't know the exact, and the amounts differ. So the amount that you had was for one particular person. But I don't, I simply don't know. That depends on the union. It would. Here's my point. Let me ask the question more directly. Is this subsequent letter also misleading because it says, in order to become a member, you've got to pay all these past dues, as opposed to saying, hey, if you want to become a member today, start paying today, and the monthly amount is $60, and that's what you owe, and you can start paying that today. Well, the board didn't make a finding on that, but I would have to say no, because the unions can do that. They can say, okay, in order to become a full member, you have to pay initiation dues. So it doesn't necessarily start, you know, the moment in time where they want to be full members. And that will depend on the union and what its constitution and bylaws say. That's exactly correct. But it doesn't appear that what was written here, as far as becoming a member, was linked to whatever the constitution and bylaw says, which was linked to what they construed to be the past due amount, right? Yes, that's correct. And the main point of the follow-up letter, I think the follow-up letter highlights that the previous letter was linked to the union's internal procedures, internal rules, not the union security clause from the expired collective bargaining agreement. All right. I know your time is up, but how does our standard of review impact what we should do here? Well, the standard of review is essentially when the board dismisses a complaint, the court should deny a petition for review if that dismissal was reasonable and supported by the evidence. And so essentially the board's decision in this case is inconsistent in our view with established precedent. We can strike it down. That is correct. Thank you very much. All right. Before I say something bad, did you draft that letter? I would not admit it if I did. Smart man. Well, in fact. I'm talking about the supposed neocultural letter, not a neocultural, a non-neocultural letter. I have a short period of time, but I want to be responsive to the questions that the panel has. Let me say most directly, every one of the board cases when we talk about board precedent, every one of the board cases, the cases cited by petitioners, I believe the case that you referred to, Judge Edwards, there is a threat, either implicit or explicit, to enforce a union security obligation. In most cases, the union's communication explicitly tells employees that if they do not pay past dues, they will be fired. I get that. Here's what, as I was reading all the materials in this case, I couldn't understand why the board knew we're saying the only threat here was loss of full union membership when I, as a non-labor law expert, read that letter and saw you don't have any choice in this. We're taking money out of your paycheck. And you're no longer going to be a member, and membership's required for your job. One, two, you can address them separately. Why isn't one, this is more than just a, we've done the math, you owe this money, please send it in. This is a demand accompanied by a threat in the form, or at least a restraint in the form of, you may think you don't have a right to pay us, but you're mistaken. We are taking that money now. I think there may be a misconception in terms of the part of that analysis that you just laid out. Petitioners knew, and the law provides, that they did not have to be members of the union in order to retain their jobs. They had not been members of the union for years when they advanced. They were members, they were just limited members in the terms of they were paying fair representation fees. Right, which is not membership at all. The word membership is irrelevant to that. There is a duty to pay the representational fee during the time that there's a contract with the union security obligation in effect. But there's no membership. And all this letter does, and it's obviously an unfortunate letter in terms of the fact that it was sent to the petitioners. But what the letter does is it tells them that if they do not clear their arrearage, they will be suspended from their union membership. The board, quite reasonably, analyzed that letter with the text of that letter within the context, the context, the relevant context being that my client has never done anything over the course of years to either threaten or suggest or coerce these employees. It's threats that we're taking your money. How is that not a threat? When they receive this. There's money you think you don't have to pay us under the National Labor Relations Act. We're taking it out of your paycheck. Have a nice day. You know, for future reference, I hear what your argument is, but I must say, and as a legal matter, I'm not entirely sure how much relevance I should attach to it. But that follow-up letter from the union for me is amazingly damning. Because if all of your premises are correct, that's not the letter that would have come from the union. And so it's laughable to me that the board says, oh, this was just a mistake. Because the union could have nailed that cold. And that would have tied to the argument that you're trying to make. That's a simple letter to write. I am an attorney. I've been in this area. I know how to write that letter. It would have taken one second, and you're done. And that's not what the union wrote. And for me, all it does is continue the effect of the coercion. And there's no way you can get out from that. And you know that as well as I do. I mean, you don't have to admit anything, but I'm just telling you for future reference, that was a terrible mistake. If you meant for it to only be a mistake, you clear it up just like that. And you say, whoa, we got this all out of line. Of course you don't know anything. That's not what that letter says. Well, if I may respond to that, in terms of timeline, what is this context in which we're looking at? Certainly the petitioner's past experience of never having been coerced or threatened or anything. I may never have had a demand for my wallet when I walk in the gate for 20 years. It doesn't mean it's not coercive when some union representative now does it. I grant you, if there had never been a threat for 20 years, and on March 31st the union had said, pay us this money or we'll have you fired, under board law that would have been illegal. Not this letter, I would respectfully submit, but under board law. We're reading the case law differently. Okay. When we look, and it should be noted that the fact that Hyatt deducted the money was dismissed as a factual element. I am talking about the letter itself which said we are taking the money. We're taking it. We're not going through you. So if I may proceed, I think Judge Edwards is also talking about facts that occurred after the fact. For my purposes now. No, I don't have to rely on them. I'm just telling you as a real matter, when you're looking at a record, it's hard not to have that hit you in the head. So let me say this and then I'll address it. It's impossible to look at the facts that happened after without Hyatt, the employer, only four days after the deduction was actually made, if the deduction is of such importance. Hyatt says this deduction was an error. Right. This deduction won't take place again. They were smart. They knew we're not going to get any unfair labor price charge filed against us. We're going to quickly clean this up. The union didn't. So if you're going to go to the after the fact, all you're doing is making your case worse. Because Hyatt protected itself. There's not going to be any ULP charge filed against us. We now realize this was a mistake and we're correcting it. That's not what the union tried to do. Well, this is not about the union's intent. This is about what? This is not about the union's intent. Because if the union intended to coerce them or didn't intend, that wouldn't matter. Strictly with the facts. Let's say you look at that letter. This is about the coercive impact upon the employees. And the board read the letter, to your point, and the board applied the statute, statutory terms, and looking within the context of the four corners of that letter and everything that preceded it that would have provided that sort of mental space for those employees to read it, the board found that the employees would conclude that the letter was sent in mistake, that the letter would not coerce them. The employee's walking into the plant. He's been doing it for 20 years. No one's ever objected. And this day, this Tuesday, the employee walks into the plant and the union official says, hand over your wallet. You owe us $60. The employee goes, I don't owe you $60. I'm only paying fair representation. Goes into work, puts on the uniform, leaves the wallet in the locker. While he's working, the employee unlocks the locker at the direction of the union, and you take $60 out of the wallet and go away. Is that person been restrained in their right not to pay the union that money? In that hypothetical, I think if there was a – Don't give me an ifs. In that hypothetical, has that employee been restrained in their ability? If the union stole money and committed a theft from the employees. My hypothetical is exactly what it is, and you don't get to add anything in, and that is the employer unlocks the locker, and you take out the $60 that that person said they didn't want to pay. They've been restrained in their right not to pay. If the purpose was to require the employee to maintain membership as a condition of work, then yes. As a condition of work. But not as a condition of work. If it was not – They're not going to be fired. They just open up the locker, and you take out the $60. If it was not as a condition of work – That person said they didn't want to pay. It would not be restraint as those terms have been applied by the National Labor Relations Board. So they have to lose their job. So in your view, they have to be threatened with loss of job. It's not enough that they're threatened loss of pay. Just to be clear, that's your legal rule. Look, if the union showed up with a two-by-four in an alley and said, Give me your money and I'll break your knees. Again, my question is, your position is that they have to be restrained in terms – they have to be coerced in terms of losing their job. Losing portions of their paycheck will not suffice. Yes or no? That's correct. If it's just the money and not related to any threat of violence or any threat of job – That's not the case law, thank goodness. That's not the case law. Do you want to sum up real quick? I'm sorry? Do you have a sum-up sentence? Did you want to sum up real quick? Yes. I would submit this. If the standard of panel should apply, means anything, should defer to the board. There has been several decision-makers look at this letter. We've had the two board members. We've had the regional director of Region 20 look at it and found it not coercive. We had the ALJ look at it and find it not coercive. And there's been a board member, a descending board member, who looked at it and found it coercive. Within that range of reaction, and I understand that legal analysis is not the same as nose counting, but it is clearly within the mainstream to find that the letter did no more than it stated on its face, which is to tell employees that if they did not clear their arrearage, they would be suspended from the union membership. These employees – Okay, I think we got your sum-up. Thanks very much. All right. Let's see. Did Mr. Taubman have time left? Okay. I'll give you two minutes. Thank you very briefly. First, counsel is wrong. The board cases say consistently that you do not need a threat tied to discharge. You do not need a threat tied to an existing union security clause. Central Telephone, Electrical Workers, 229 NLRB 469, merely by, quote, notifying non-union bargaining and employees that they would be required to pay union dues, unquote. That's the violation. Pomona Valley, the threat to collect dues and fees, quote, unquote. That's the violation. It's the threat. It's the notification that you owe money. The union is your fiduciary – Is there a part of the case where they – that you're aware of where they – the letter said we're taking the – it'll be out of your paycheck. We've gone to the employer and it's going to be gone from your next paycheck? I don't know of any case quite like this one. Or they've said salary. I don't know of any case quite like this one where they tie it to we're going to automatically deduct it from your salary. So they're wrong on the law. Number two, the standard of review for this court is the court has refused to enforce board orders that, quote, depart from precedent without reasoned analysis, unquote. Manor Care, the NLRB from 2016, that is the governing standard. This board, without reasoned analysis, departed from the cases that I just cited, and that's this case in short order, unless the court has any questions. And that's it. Thank you very much. We ask that the case be reversed and or remanded for a proper decision. Thank you. Thank you. The case is submitted.
judges: Millett, Wilkins, Edwards